UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
REGINA BRYANT,

               Plaintiff,

-against-

EMIGRANT MORTGAGE
COMPANY, INC.,

               Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**

10-CV-0102 (RJD)

DEARIE, Judge.

Plaintiff Regina Bryant ("Bryant") seeks rescission of a mortgage, damages, and related relief, alleging that, in violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), defendant Emigrant Mortgage Company, Inc. ("Emigrant") under-disclosed certain finance charges at the closing and later rejected Bryant's ensuing request to rescind the mortgage. As a threshold claim, however, Bryant first alleges that Emigrant breached the agreement settling the state court action in which she first asserted these same TILA violations.

Emigrant moves under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of subject matter jurisdiction. For the reasons set forth below, the motion is granted and the complaint is dismissed.

**FACTUAL BACKGROUND**

In the "preliminary statement" section of her complaint, Bryant asserts that "[t]his action is filed under" the TILA "to enforce [her] right to rescind a consumer credit transaction and void the security interest in her home . . . by reason of [Emigrant's] violation of TILA" and related

regulations. Cmplt. ¶ 1. The ensuing "Factual Allegations" give the following account. In 1984, Bryant and her then-husband purchased a four-family residential apartment building in the Crown Heights section of Brooklyn (the "Property") and lived in one of its units for more than 25 years. Cmplt. ¶¶ 5-9. Family members resided in two of the other units, and the fourth was rented to a third-party. Cmplt. ¶¶ 10-11. When the couple divorced, Bryant purchased her husband's interest in the Property with funds obtained through a mortgage from Southern Star Mortgage Corp., in 2002, in the amount of $250,000, that was immediately assigned to Washington Mutual Bank (the "WaMu Mortgage"). Cmplt. ¶¶ 12-13. The interest rate on the WaMu mortgage was 5.75% and Bryant's monthly principal and interest payment was $2,076.03. Cmplt. ¶¶ 14-15.

In early 2006, Bryant received a telephone solicitation from a mortgage broker employed by Discount Home Mortgage Corp., who told Bryant he could help her refinance and "get cash out of the Property," which at the time was appraised at $875,000; the balance on the WaMu mortgage at that time "was only about $215,000." Cmplt. ¶¶ 16-18. Emigrant eventually approved Bryant for a mortgage in the principal amount of $375,000 at 11.625% (the "Emigrant Mortgage"). Cmplt. ¶¶ 20, 27.

During the closing on the Emigrant Mortgage on June 21, 2006, Emigrant furnished Bryant with a TILA Disclosure Statement. According to that statement, the total amount of the payments Bryant would make pursuant to the Emigrant Mortgage was $1,319,754, and the total Finance Charge was $950,561.95 (the latter figures included $944,754 in interest and $5,807.95 for the broker fee and other items Bryant paid at the closing). Cmplt. ¶¶ 37-40.

Emigrant violated the TILA, according to Bryant, by failing to include, as part of the Finance Charge listed on the TILA Disclosure, the following items: a "recording fee overcharge"

2

of $50 that Bryant incurred when recording the deed to the Property with the New York City Department of Finance Office of the City Register; a second "recording fee overcharge" of $88 incurred when recording the Emigrant Mortgage; a fee of $70 that Bryant paid to record the satisfaction of the WaMu Mortgage; and a "title insurance overcharge" of $288 that she also incurred. Cmplt. ¶¶ 41-75.

The next event in the complaint's narrative occurs a little over a year after the closing: on August 28, 2007, Emigrant commenced foreclosure proceedings against Bryant in Kings County Supreme Court. Cmplt. ¶ 76. See generally *Emigrant Mortgage Company, Inc. v. Regina Bryant, et al.*, Index No. 32709/2007 (the "Kings County Action"). On October 4, 2007, Bryant sent Emigrant formal notice that she was rescinding the mortgage, and on October 17, 2007, Emigrant formally rejected the rescission request. Cmplt. ¶¶ 77-78.

Thereafter, "the parties engaged in discovery regarding the claims asserted by the parties." Cmplt. ¶ 79. Those "claims" included three counterclaims asserted by Bryant that allege the same TILA violations asserted in this action and that seek the same relief; Bryant's complaint omits this detail, but the state court pleading in which Bryant first raised her TILA claims is part of the record before me. See *Defendant's Amended Verified Answer, Affirmative Defense and Counterclaims* in the Kings County Action, Exhibit B to Affirmation of Brian Goldberg, Esq., in Support of Motion to Dismiss ("Goldberg Aff.") (Docket Entry 6-4).[1]

The complaint proceeds to report that both Emigrant and Bryant eventually moved for summary judgment, that when the parties appeared to argue the motions in March of 2009 the presiding justice "advised the parties that she had not read the papers and did not know anything

---

[1] In Bryant's state court pleading, her TILA claims are styled as three distinct causes of action, whereas in her federal complaint they are consolidated into two, but the TILA violations that Bryant alleges and the relief that she seeks in the two pleadings are identical.

3

about the [TILA]" and instead "set a settlement conference." Cmplt. ¶¶80-85. A settlement was in fact reached, see Cmplt. ¶87; the full text of the short, hand-written agreement (the "Settlement Agreement"), which the complaint only paraphrases (and incompletely so), provides as follows:

> The parties agree that all pending motions shall be settled as follows:
>
> The defendant, Regina Bryant hereby withdraws her answer, including all claims & counterclaims[,] with prejudice. The plaintiff [Emigrant] agrees to accept the sum of $450,000 in full satisfaction of its loan, provided said payment is made no later than 1/11/2010. The defendant [Bryant] further agrees she is responsible to pay all real estate taxes, water & sewer charges and insurance premiums from today forward. The parties agree that [the] agreement is subject to senior management approval by Plaintiff. The plaintiff further agrees that as part of its recommendation to senior management, it will recommend omission of all negative references to this mortgage to the credit bureau.

Exhibit A to Goldberg Aff. (Docket Entry 6-3).

The Settlement Agreement was executed by the parties through counsel and so ordered by the court on July 10, 2009. Id.

The complaint in this action further alleges that a month later, on August 10, 2009, and then again on September 1, September 23 and October 28, 2009, Bryant notified Emigrant that negative references to the Emigrant Mortgage continued to remain on her credit report, "making it nearly impossible for her to obtain a loan on favorable terms so that she had the ability to perform her obligation under the Settlement Agreement." Cmplt. ¶¶ 88-92.

For her first cause of action, captioned "[b]reach of contract," Bryant alleges that Emigrant "failed to remove all negative references to the Emigrant Mortgage" from her credit reports "within a reasonable time after the execution of the Settlement Agreement" and "thereby

4

prejudic[ed] [her] ability to obtain a new mortgage on the Property." She seeks "a declaration that the Settlement Agreement" is therefore "null and void." Cmplt. ¶¶ 93-98.

Bryant's second and third causes of action, captioned "TILA Rescission" and "Violation of TILA—Failure to Properly Respond to Rescission Request," together seek rescission of the mortgage, termination of any security interest in the Property created pursuant to the Emigrant Mortgage, forfeiture of the Emigrant Mortgage proceeds, statutory damages (for the alleged improper response to her rescission request), actual damages, and attorney's fees.

## DISCUSSION

### A. Controlling Legal Standards

"It is a fundamental precept that federal courts are courts of limited jurisdiction." Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). Those "limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." Id. See generally 13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, §3523.1 (3d ed. 2008) at 212 (collecting cases) (federal court "may hear a case only if it falls within the judicial power of Article III of the Constitution and a statutory grant of subject matter jurisdiction"). And, "because [the Supreme Court] presume[s] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record, the party asserting federal jurisdiction when it is challenged has the burden of establishing it." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n. 3 (2006) (internal quotation marks and citation omitted). Accord Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists"). When deciding the question, a district court "must accept as true all material facts alleged in the

complaint and draw all reasonable inferences in the plaintiff's favor," Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008) (internal quotations and citation omitted), but "may [also] consider materials extrinsic to the complaint." Phifer, 289 F.3d at 55.

The Supreme Court has made emphatically clear that the merits of a claim and a federal court's jurisdiction to entertain it are wholly distinct inquiries and that jurisdiction generally *must* be resolved first. Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998). The Court in Steel "decline[d] to endorse" the practice, frequent among district and appellate courts, of "'assuming' jurisdiction for the purposes of deciding the merits," an approach the Ninth Circuit labeled "'the doctrine of hypothetical jurisdiction.'" Id. at 94 (quoting United States v. Troescher, 99 F.3d 933, 934 n. 1 (9th Cir. 1996)). This practice, the Court explained, "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." Id.

The Steel opinion impressed upon lower federal courts and would-be federal litigants what is ultimately at stake on a 12(b)(1) motion: "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." Id. at 94-95 (internal quotation and citation omitted). The Court further explained:

> Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning. Much more than legal niceties are at stake here. The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects. For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act *ultra vires*.

6

Id. at 101 (internal quotations and citations omitted).

The Second Circuit has taken Steel's admonition to heart. See Alliance for Environmental Renewal, Inc. v. Save the Pine Bush, Inc., 46 F. 3d 82 (2d Cir. 2006). The Circuit acknowledged in that case that "before 1998," it "occasionally assumed the existence of jurisdiction and proceeded directly to the merits of a case in circumstances where the jurisdictional issue was close or complicated and the plaintiff's claim on the merits could be easily rejected," but that "the Supreme Court [in Steel] has substantially ended that practice." Id. at 85.

The Steel decision itself nevertheless "acknowledged" that some of the Supreme Court's own cases "have diluted the absolute purity of the rule that Article III jurisdiction is *always* an antecedent question." Id. at 101 (emphasis added). The Court wrote:

> It is firmly established in [the Court's] cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case. As we [have] stated. . . [j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. Rather, the district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, *unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous. Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.*

Id. (all internal quotations and citations omitted) (emphases added).

## B. Analysis

In light of the foregoing authorities, I examine the averments of Bryant's complaint for the sole purpose of assessing their jurisdictional significance. Because the complaint pleads two TILA claims, it naturally asserts that subject matter jurisdiction over the action is conferred by TILA's specific statutory grant, see 15 U.S.C. §1640(e) ("[a]ny action under this section may be brought in any United States district court. . ."), and by the general jurisdictional grants of 28 U.S.C. §1331 ("district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States") and 28 U.S.C. §1337. Cmplt. ¶2.[2] With respect to the state law breach-of-contract claim, the complaint does not specifically invoke 28 U.S.C. §1667 or use the term "supplemental jurisdiction," but construing all ambiguities in Bryant's favor, Sharkey, 541 F.3d at 83, the Court can assume that supplemental jurisdiction is what it is being asked to exercise.

In the abstract, this jurisdictional recipe is neither remarkable nor inadequate. In its particulars, however, it is entirely untenable. Plaintiff's attempt to resurrect and re-assert federal claims that by her own admission were settled in a prior action does not render this case an "action under" TILA within the meaning of 15 U.S.C. § 1640(e), or an "action[ ] arising under the . . . laws . . . of the United States" within the meaning of 28 U.S.C. §1331. Indeed, I readily conclude that, *as the purported bases of federal jurisdiction*, federal claims that a plaintiff herself admits were formerly settled fall within the category of claims that, though they "appear" in the

---

[2] TILA has been held to be "an Act of Congress regulating commerce" within the meaning of section 1337. See, e.g., Sosa v. Fite, 465 F.2d 1227, 1229 (5th Cir. 1972); Finnerty v. Cowen, 508 F.2d 979, 983 (2d Cir. 1974) (citing Sosa approvingly). But as noted commentators have explained, section 1337 had importance only when section 1331 carried an amount-in-controversy requirement, but since 1980, when that requirement was removed, section 1337 "is superfluous." Wright & Miller, §3573.4 at pp. 648-49.

8

complaint, do not genuinely establish federal jurisdiction. See Steel, 523 U.S. at 101 ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper" when the claim "appears to be made solely for the purpose of obtaining jurisdiction," or is "wholly insubstantial," "frivolous," "implausible," or "otherwise completely devoid of merit").

What remains in Bryant's breach of contract claim, which she does not even seriously contend implicates federal law. As Steel explains, a "district court has jurisdiction if the right of [the plaintiff] to recover under [her] complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." 523 U.S. at 101. The question is whether Bryant's "right . . . to recover" under her breach of contract claim turns on the construction of the TILA, and the answer, quite readily, is no.

As noted, Bryant specifically alleges that Emigrant breached the portion of the settlement agreement in which it "agree[d] . . . that it will recommend omissions of all negative references to this mortgage to the credit bureau" (Docket Entry 6-3) by "fail[ing] to remove all negative references to the Emigrant Mortgage" from her credit reports "within a reasonable time after the execution of the Settlement Agreement thereby prejudicing [her] ability to obtain a new mortgage" and thus impairing her ability to "perform her obligation under the Settlement Agreement." Complaint ¶¶ 92-95. In opposition, Emigrant defends the validity of the agreement as a lawful accord and satisfaction;[3] argues that, as reasonably interpreted, the agreement only required that it undertake reasonable efforts to effect changes in Bryant's credit report; offers

---

[3] Pursuant to the settlement, Emigrant agreed to accept $450,000 in full satisfaction of Bryant's then outstanding mortgage loan debt of $611,322.11. See, e.g., Rose Inn of Ithaca, Inc. v. Great American Insurance Co., 75 A.D.3d 737, 739 (3d Dep't 2010) ("An accord and satisfaction is effected when the parties . . . enter into a new contract wherein they agree that a stipulated performance will be accepted in the future, in lieu of an existing claim. [It] requires a dispute as to the amount due and knowing acceptance by the creditor of a lesser amount") (internal quotations and citations omitted).

documentation that it in fact made the required communication with the credit bureau; and cross-alleges that Bryant failed to perform her obligation to make timely payment of the promised settlement sum. See generally Goldberg Aff. and exhibits thereto.

These assertions do not implicate the TILA: the dispute is quintessentially one of contractual interpretation and performance and wholly governed by state law. See, e.g., Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999) ("Settlement agreements are contracts and must therefore be construed according to general principles of contract law."); Rose Inn of Ithaca, 75 A.D.3d at 739 ("an accord and satisfaction constitutes a contract").

To the extent Bryant believes that her breach of contract claim might "arise under" federal law merely because the contract in question settles a federal claim, she would also be mistaken. See Thanning v. Nassau County Medical Examiners Office, 187 F.R.D. 69, 71 (E.D.N.Y. 1999) ("[f]ederal courts are courts of limited jurisdiction and do not obtain jurisdiction over enforcement of settlement agreements simply by virtue of the fact that the dispute settled was within the court's subject matter jurisdiction. Instead, enforcement of a settlement agreement requires an independent basis for jurisdiction") (citing Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377-78 (1994)). Indeed, the words of Justice Scalia, writing for a unanimous court in Kokkonen, are especially apt here:

> The short of the matter is this: The suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute. The facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business.

Kokkonen, 511 U.S. at 381.

Bryant, of course, has alleged no independent basis for the exercise of federal jurisdiction over the state court breach of contract claim. The best she can offer is a theory that might be called "conditional" jurisdiction. According to Bryant's hypothesis, the lack of federal jurisdiction at the outset of a case would not be fatal. Instead, jurisdiction would arise at some later point in the case, *after* the threshold state law claim is adjudicated and, in this case, only if Bryant were to prevail on that claim. Bryant specifically argues: "Because the settlement agreement is null and void, the parties would be restored to their prior position giving the Court jurisdiction to decide [Bryant's] TILA claims." Memorandum of Law in Opposition (Docket Entry 19) at p. 9. Bryant's brief further asserts: "If, however, the Settlement Agreement remains an enforceable contract, the Plaintiff would concede that the Court lacks jurisdiction to decide [Bryant's] TILA rescission claim and [Emigrant] could move to enforce the Settlement Agreement in Kings County Supreme Court." Id. at p. 7.

There is, of course, no support for Bryant's notion of later-arising federal jurisdiction. To the contrary, it is axiomatic that a legitimate basis for the court's jurisdiction must be established at the time an action is commenced. Louisville & Nashville Railroad Co. v. Mottley, 211 U.S. 149, 152 (1908) (federal question jurisdiction found lacking because, "[a]lthough [plaintiff's] allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution").

In sum, as I have previously had occasion to remark, "[t]he Court's authority to act is not a matter of maybe." Lucker v. Bayside Cemetery, 262 F.R.D. 185, 189 (E.D.N.Y. 2009). Nor is it conditional or negotiable. A party commencing an action in federal court has the burden of

11

showing, upon arrival, the actual basis for the Court's authority to entertain that action, and it is in the discharge of this burden that Bryant has come up short. The Court therefore takes no view on the merits of the underlying dispute between the parties.

## CONCLUSION

For all of the foregoing reasons, Emigrant's motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure is granted. The complaint is dismissed for lack of subject matter jurisdiction.

SO ORDERED.

Dated: Brooklyn, New York
August 31, 2011

s/ Judge Raymond J. Dearie

_____
RAYMOND J. DEARIE
United States District Judge